JOHN KALKAS AND IRENE KALKAS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Kalkas v. Commissioner
Docket No. 6224-79
United States Tax Court
T.C. Memo 1982-1; 1982 Tax Ct. Memo LEXIS 742; 43 T.C.M. (CCH) 246; T.C.M. (RIA) 82001; January 5, 1982. John Kalkas, pro se A. Chris Zimmerman and John Franklin, for the respondent. DRENNEN
MEMORANDUM FINDINGS OF FACT AND OPINION DRENNEN, Judge: This case was assigned to and heard by Special Trial Judge Darrell D. Hallett pursuant to section 7456(c), Internal Revenue Code of 1954, [1] and Rules 180 and 181 of the Tax Court Rules of Practice and Procedure.[2] The Court agrees with and adopts his opinion which is set forth below. *743 OPINION OF THE SPECIAL TRIAL JUDGE HALLETT, Special Trial Judge: Respondent determined deficiencies in petitioners' [3] Federal income tax of $ 2,301.78 for 1975 and $ 1,117 for 1976, and an addition to tax under section 6653(a) for 1976 in the amount of $ 55.85. Respondent has stipulated that petitioners are entitled to additional dependency exemptions as alleged in the petition. Accordingly, the issues remaining for decision are (1) What was the amount of tokes received by petitioner during the years 1975 and 1976 in connection with petitioner's employment as a dealer at the MGM Grand Casino is Las Vegas; and (2) whether petitioner is liable for the section 6653(a) addition to tax for 1976. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioner John Kalkas was a resident of Las Vegas, Nevada, at the time the petition was filed. He worked as a roulette wheel dealer at the MGM Grand casino in Las Vegas during the calendar years 1975 and 1976. He worked 2,147 hours during 1975 and 2,027 hours during *744 1976. These hours included regular, overtime, and sick pay hours. Petitioner normally worked an 8 hour shift. In addition to his regular salary, petitioner received a share of the tips, or "tokes" as they are called in the industry, left by patrons of the casino for the dealers. Petitioner reported tokes totaling $ 500 on his 1975 return and $ 4,000 on his 1976 return. Respondent determined that petitioner had toke income of $ 11,218.24 for 1975, and $ 9,476.26 for 1976. Respondent's determination was based upon a toke rate of $ 44 per adjusted shift for all of the dealers working in the MGM Grand casino during the years 1975 and 1976. The number of adjusted shifts for petitioner (and all other dealers) was arrived at by respondent by reducing the total hours worked during 1975 by 5 percent to allow for shifts for which the dealer may have been paid a salary but received no tips because of sick leave to lack of business, and to allow for possible error in the records of the MGM Grand. For the year 1976, respondent made an additional 10 percent reduction in hours to account for the culinary strike that year and a change in the employer's method of accounting for holidays worked. *745 OPINION The issue as to the amount of toke income received by dealers employed by the MGM Grand casino during the years 1975 and 1976 was decided in 13 previous cases tried before this Court. [4] Petitioner in this case has stipulated that the toke rate per adjusted shift ($ 32.00) arrived at by the Court in the other decided cases is a reasonable rate. However, petitioner contends that he actually worked fewer hours and, therefore, had fewer adjusted shifts, than respondent determined. *746 Respondent based his determination as to the total hours worked by petitioner upon the payroll records of MGM Grand. Those records were introduced into evidence in this case and were explained by the paymaster employed by the MGM Grand casino during the years in question. The records substantiate the number of hours utilized by respondent in his determination as to petitioner's toke income. Petitioner contends, however, that even though the MGM records reflect petitioner worked at least an 8 hour shift during most of the periods involved, he actually was on the job less than 8 hours during a significant number of shifts during the years 1975 and 1976. In this regard, petitioner contends that he was frequently required to leave his station during his shift to attend to family emergencies and that, on those occasions, he was paid a salary based upon a full 8 hour shift, but only received a percentage of the tokes paid to each dealer working a full shift. His percentage, petitioner maintains, reflected the number of hours he was actually on the job. Aside from very general testimony concerning his alleged practice of leaving the premises for personal reasons during a shift, *747 petitioner has presented no specific evidence as to the number of hours he was paid a full salary but allegedly received only a partial share of tokes, nor has he presented any corroborating evidence to support his contention that he did in fact receive less than a full share of tokes for a each 8 hour shift that he was paid a salary. The paymaster employed by the MGM Grand during the years in question, whose responsibilities included keeping the records as to hours worked by dealers, testified the records were compiled from the actual sign-in sheets the dealers were required to sign when they went on and off shift. She was unaware of any practice that dealers would be paid a salary for hours that they were not actually on the job. We conclude that petitioner has failed to prove that the number of hours for which he was paid a rateable share of tokes was any different than that determined by respondent. Petitioner reported some toke income for the taxable year 1976. Due to the uncertainty in the law regarding the question as to whether tokes are taxable that existed during much of that year [5], we conclude that petitioner is not liable for the addition to tax provided by section *748 6653(a) for the year 1976. Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. ↩
2. The Court has concluded that the post-trial procedures of Rule 182, Tax Court Rules of Practice and Procedure↩, are not applicable in these particular circumstances. This conclusion is based on the authority of the "otherwise provided" language of that rule.
3. Irene Kalkas is a party to his action only because she filed a joint return with John Kalkas, hereinafter petitioner.↩
4. Florence v. Commissioner, T.C. Memo. 1981-305; Knight v. Commissioner, T.C. Memo. 1981-306; Todd v. Commissioner, T.C. Memo. 1981-307; Chappell v. Commissioner, T.C. Memo. 1981-308; Tapper v. Commissioner, T.C. Memo. 1981-309; Plate v. Commissioner, T.C. Memo. 1981-310; Dixon v. Commissioner, T.C. Memo. 1981-311; Guarino v. Commissioner, T.C. Memo. 1981-312; Keen v. Commissioner, T.C. Memo. 1981-313; Hartman v. Commissioner, T.C. Memo. 1981-314; Kozloff v. Commissioner, T.C. Memo. 1981-315; Small v. Commissioner, T.C. Memo. 1981-316; Homick v. Commissioner, T.C. Memo. 1981-317↩.
5. See cases cited in footnote 4 for a full discussion of this issue.↩